MALONEY ET AL., RESPONDENTS, *v.* KING ET AL., APPELLANTS.

(No. 1,813.)

(Submitted April 22, 1904.   Decided May 23, 1904.)

*Injunction — Operation of Ore Vein—Counter Injunction—Multiplicity of Actions—Equity—Jurisdiction.*

1. Where, in a suit to quiet title to a vein of ore and for damages for a trespass on the vein, defendants did not seek an injunction restraining plaintiffs from operating the vein, they were not entitled to such an injunction in a subsequent suit by them, proceeding for such relief having been open to them in the former suit.
2. Where, in a suit for an injunction restraining the operation of an ore vein, the injunction was denied, complainants might not, after dismissing the suit, institute another on the same ground, and again apply for an injunction for the same purpose.
3. Plaintiffs sued for damages because of the trespass on an ore vein, for an injunction restraining defendants from operating the vein, and for the quieting of plaintiffs' title to the vein, the issue being whether the apex of the vein was within the boundaries of plaintiffs' or within the boundaries of defendants' location.   An injunction was granted, and subsequently defendants commenced various suits against plaintiffs, for trespass, etc., on the vein, the question in all the actions being the location of the apex of the vein.   *Held,* that plaintiffs were properly awarded in their original suit an injunction restraining defendants from bringing any action or interfering with the removal of ores from the vein until the final determination of plaintiffs' suit.
4. When a court of equity takes jurisdiction of a controversy between parties, its jurisdiction is full and complete, and it may render a final judgment in relation to all matters involved in and growing out of that controversy.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

SUIT by J. H. Maloney and others against Silas F. King and others. From an order extending an injunction *pendente lite,* defendants appeal. Affirmed.

*Mr. James E. Murray,* and *Messrs. McBride & McBride,* for Appellants.

*Mr. John J. McHatton,* and *Mr. C. P. Drennen,* for Respondents.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

Appeal by defendants from an order extending the terms of an injunction *pendente lite.* The circumstances out of which the order complained of arose are, briefly, as follows: Plaintiffs were the owners of a certain portion of the Plymouth quartz lode mining claim. Defendants were the owners of the Silver King quartz lode mining claim, which adjoins the Plymouth claim on the north. Both are patented properties. The veins having their apices within the boundaries of the Silver King apparently dip to the south, and under the surface boundaries of the Plymouth. In the year 1899 plaintiffs began this suit against defendants to recover damages for an alleged trespass upon the Plymouth by means of underground workings conducted through a shaft upon the Silver King, and the extraction of ores from a vein whose apex is alleged to be within the Plymouth surface boundaries, and for an injunction against further trespasses. Plaintiffs also sought to have their title to the vein in question determined and quieted. The defendants in their answer denied the alleged trespass, and set up that this vein had its apex within the surface boundaries of the Silver King, owned by them, and dipped under the surface boundaries of the Plymouth. They also asked the court that their title to the vein in question be determined and quieted. An injunction *pendente lite* was issued against defendants soon after filing the bill of complaint, which restrained defendants "from entering

and trespassing upon, or working, or mining, or excavating, or digging within or underneath the surface of that portion of the Plymouth mining claim hereinafter described, and from extracting, taking away, or converting to their own use any of the ores, rocks or minerals therein, and from in any way interfering with any portion of the said premises, or any part thereof, or any rock or ores or mineral therein, within the surface lines of said portion of said Plymouth lode claim, hereinafter described, extended vertically downward." The action of the court below in granting the above injunction was affirmed by this court on appeal. The defendants, soon after the granting of this injunction, instituted a suit against plaintiffs herein, alleging a trespass by them upon the same vein, claiming that the apex thereof was within the surface boundaries of the Silver King, and not within the surface boundaries of the Plymouth, and asked that an injunction issue against plaintiffs herein to restrain them from further trespass. This injunction was denied, and the plaintiffs therein (defendants herein) appealed to this court, and made an application for an injunction pending the appeal, which was refused. They then dismissed the appeal, and filed a *praecipe* in the court below dismissing the case. On the same day they instituted a new suit, setting forth, in substance, all the matters alleged in the suit last mentioned, and the further allegation that the plaintiffs herein were filling up the work theretofore done by the plaintiffs in that suit and destroying their evidence. Another temporary injunction was applied for. The defendants in that suit answered, setting up, among other things, the pendency of this suit, and also the commencement and dismissal of the other suit. Plaintiffs in that suit applied for a temporary injunction, which was refused. This action was dismissed on grounds which are unimportant here.

The practice pursued by defendants in this regard cannot be countenanced or approved of by this court, for at least two reasons:

1. The object of defendants sought to be accomplished by

these two suits was undoubtedly to obtain a reciprocal or mutual injunction. They, being enjoined from working the disputed ground, desired that the plaintiffs should also be enjoined, so that the premises should remain in *statu quo* pending the litigation. However desirable such result would seem to be, it could have been attained in the original suit by petition on part of defendants setting forth the facts and the reasons for such relief. Upon a hearing, if the court concluded that a proper showing had been made, it would undoubtedly have granted the relief sought. The policy of the law is to prevent useless litigation, and, whenever a proceeding is instituted broad enough in its character to include the hearing and determination of all existing issues between the parties touching the same subject-matter, such issues should all be presented for determination in that suit, and neither the court nor the parties be vexed with separate suits.

2. We cannot commend the practice of filing a complaint and applying to a court for an injunction, and, if denied, dismissing the suit and instituting another of the same character for the same relief, and again applying to the same judge, or another judge, for an injunction. The writ of injunction is one of the extraordinary processes of the courts, and should not be trifled with. If an injunction be denied, the applicants have a remedy by appeal, and there is no reason why the decision on appeal should not be conclusive and binding upon applicants, the same as in every other suit. (*Wetzstein* v. *Boston & Montana Consol. C. & S. Mining Co.,* 26 Mont. 193-208, 66 Pac. 943.) These points do not necessarily arise in this case, but the practice pursued herein seems to be more or less general throughout the state, and this court deems it proper to announce what it considers the correct practice.

Subsequent to the above proceedings, various suits were commenced by defendants herein as plaintiffs, against plaintiffs herein as defendants (in some of which suits third persons were joined as defendants), some of which were for the recovery of certain ores extracted by the plaintiffs herein, and others for

the value of certain ores as upon a conversion, all taken from the same vein in controversy. Some nine of these suits were pending at the time application was made for the order appealed from. The affidavits upon which this order was granted stated that all of the ores involved in these nine suits were taken by the defendants therein (plaintiffs herein) from a vein which had its apex within the Plymouth surface boundaries. The defendants presented affidavits by which they claimed that, while the ore was taken from the same vein, the apex thereof was within the surface boundaries of the Silver King. Plaintiffs thereupon asked that the preliminary injunction against defendants, above mentioned, be amended, enlarged and extended so as to restrain defendants from "bringing any action, suits or proceedings against the plaintiffs herein, or their lessees or any person acting under them, and from interfering with the mining or the removal of ores from the Plymouth lode claim until the final determination of this action, and that the temporary injunction order heretofore issued be amended, extended and enlarged so as to specifically enjoin them therefrom." Upon the hearing of this application plaintiffs introduced the complaints and answers in the suits brought by the defendants for an injunction, and the complaints and summons in each of the nine suits above mentioned for the recovery of ore or the value thereof. At the conclusion of the hearing the court extended the injunction as asked. The defendants settled a bill of exception and appeal from such order.

It is very doubtful whether the brief presented by appellants complies with the rules of this court, and consideration of the appeal is objected to on this ground. But an investigation of the briefs and record has disclosed the fact that one prominent question is presented to the court for consideration, and, it being a question of more or less importance to litigants in general, we have concluded to give such question consideration, under the theory announced in *Alder Gulch Con. Min. Co.* v. *Hayes,* 6 Mont. 31, 9 Pac. 581, and *Brownell* v. *McCormick,* 7 Mont. 12, 14 Pac. 651.

As before stated, the appeal is from the order of the court extending the terms of the preliminary injunction as petitioned for. No question is raised as to the appealable character of this order, and therefore this question is not considered or decided. The only question which can be considered upon the brief of appellants is whether the court erred in making the order appealed from. The consideration of this question involves only the correctness of this ruling in so far as it affects the plaintiffs herein. The effect of our conclusions upon third parties to suits whose prosecution has been restrained is not considered or decided. Bearing in mind that the question as to whether the apex of the vein was within the surface boundaries of one location or the other, and that the ownership and title thereto, and consequently the primary ownership of all ore in such vein, would be determined in this suit, it follows that the important question of such ownership of the ore involved in each of the nine suits which were enjoined could have been heard and determined in this suit.

If the ores in question in these suits were extracted from a vein the apex of which was within the surface boundaries of the Silver King, the plaintiffs in such suit were the primary owners thereof; but if, on the other hand, the ore in question had been extracted from a vein the apex of which was within the Plymouth boundaries, then the defendants in such suits were the primary owners thereof. So we perceive that the question at the basis of each of these suits was, within the surface boundaries of which claim was the apex of the vein from which the ore was extracted to be found? or, in other words, did the vein from which the ore was taken belong to the one party or the other? The decision in this suit would have settled the controversy as to the primary ownership of these veins, and therefore of all the ore contained therein. We are therefore of the opinion that there was no occasion for the instituiton of these suits, and that their pendency interfered with the jurisdiction of the court having the control of the suit in which the order appealed from was entered.

It is a well-established principle that, when a court of equity takes jurisdiction of a controversy between parties, its jurisdiction is full and complete, and it may render a final judgment in relation to all matters involved in and growing out of that controversy. Here a suit was commenced in which the primary ownership of all the ores in each vein could have been settled, and it was not only the right, but the duty, of the court to prevent a multiplicity of suits, with the attendant annoyance to plaintiffs herein, and enjoin the defendants herein from prosecuting against plaintiffs herein any suits of the character of those enjoined, until a final determination of this action. But the original injunction was sufficient to accomplish this purpose. The defendants might have been punished for a violation of its terms because of the commencement of these suits.

The following statement by Beach, in his Law on Injunctions, is very pertinent and correct: "An injunction must be obeyed in its spirit as well as its letter. The party enjoined must not do the forbidden thing, nor permit it to be done, nor effect it by trick or evasion. In deciding whether there has been a breach or not, the objects for which the relief was granted must be considered." (Beach on Injunctions, par. 251; *Grand Junction Canal Co.* v. *Dimes,* 17 Simons, 38, 42 Eng. Chan. Rep. 38; *Smith* v. *New York Cons. Stage Co.,* 28 How. Prac. 277; *Ex parte Vance,* 88 Cal. 281, 26 Pac. 118.)

To hold that the defendants could not mine any ore in the disputed territory, could not take away or convert to their own use any of the ores, rocks or minerals therein, could not interfere with any portion of the premises, or any part thereof, or any of the rocks, ores or minerals therein, but that they might recover the same, or the value thereof, after plaintiffs had extracted them, while a suit was pending the purpose of which was to determine the rights of the parties to the veins from which the ore was extracted, would be, at least, anomalous. The legal effect of the original injunction being the same before as after amendment, and this court having affirmed the granting

thereof, no error could be predicated upon the order appealed from.

We therefore advise that the order appealed from be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the order is affirmed.